IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER FINANCE C.D., INC. | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ARKADY SIROTOVSKY, et.al., | : | |
| Defendants and Third-Party | : | No. O2 CV 4977 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| PENN FINANCIAL GROUP, INC. et.al. | : | |
| Third-Party Defendants. | : | |

**THIRD-PARTY DEFENDANT GENE BURD'S MEMORANDUM OF LAW
IN SUPORT OF HIS MOTION TO DISMISS
THE COUNTERCLAIM AS AGAINST HIM
OR, ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT**

Third-Party Defendant Gene Burd ("Burd") respectfully submits this

Memorandum of Law in support of his Motion to Dismiss the Counterclaim as Against

Him Or, Alternatively, For A More Definite Statement of the Counterclaim pursuant to

the Fed.R.Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted,

Fed.R.CIv.P. 9(b) for failure to plead fraud with particularity, for failure to properly plead

the essential elements of a RICO claim, or, alternatively, moves pursuant to Fed.R.Civ.P.

12(e) for a more definite statement.

I.     **PRELIMINARY STATEMENT**

This case is one of the many disturbingly common lawsuits in which a

relationship between the members of a closely-held corporation goes sour and they turn

on everyone else around blaming for their problems. Plaintiff Alexander Finance C.D.,

Inc. ("Alexander Finance") commenced this RICO action on July 22, 2002 by filing a

Verified Complaint alleging the violation of 18 U.S.C. § 1962 (c), violation of 18 U.S.C.

§ 1962 (d) for conspiracy, breach of fiduciary of an officer and director, breach of duty of

loyalty of an employee, common law fraud, conversion, unjust enrichment, imposition of

constructive trust, breach of contract and civil conspiracy.  Grasping at straws, all of the

Defendants have filed a Counterclaim against Alexander Finance and Gene Burd

("Burd"), among other additional eight Third-Party Defendants, containing nothing but

conclusory unsupported factual allegations, claiming that all of the Third-Party

Defendants wrongfully deprived him of his shareholder and member status in Alexander

Finance and other companies formed by the parties.

 The Counterclaim should be dismissed as to Burd for the following reasons:

First, the Counterclaim must be dismissed because it fails to plead the essential

elements of a RICO claim, including the existence of a RICO enterprise, a pattern of

racketeering activity, and the requisite predicate acts.  The Counterclaim also fails to

plead predicate acts of fraud with requisite particularity as required by Rule 9(b).

Second, Counterclaim fails to state a claim upon which relief can be granted,

because apart from general conclusory allegations of Burd's purportedly "actionable"

conduct, Counterclaim does not contain a <u>single</u> separate and concrete example of such

conduct.  In fact, the Counterclaim is so factually deficient, that it is almost impossible

for Burd to form any intelligible responsive pleading.  One can quickly surmise that

Third-Party Defendants' Counterclaim against Burd has no purpose but to harass, vilify,

and embarrass Burd.  Fortunately, this Court has a number of legal grounds on which to

dismiss Defendants/Third-Party Plaintiffs' Counterclaim as to Third-Party Defendant

Gene Burd. Alternatively, the Court should direct Plaintiffs to file a More Definite

Statement.

II.     **FACTUAL BACKGROUND**[1]

   A.     **THE RELEVANT PARTIES**

Plaintiff Alexander Finance is a New Jersey corporation that was formed in 1995 by Third-Party Defendants Andrew Charoff ("Charoff"), Eugene Uritsky ("Uritsky") to engage in the business of importing coal from Russia into Turkey and other countries through Russian and Ukrainian ports. At the time of formation, Uritsky and Charoff each held 40% of the shares of Alexander Finance. Compl. at ¶19. Charoff was appointed President of Alexander Finance and was responsible for general and financial management of the business. Compl. at ¶19. Uritsky was responsible for sales and negotiations with customers and chartering of vessels to deliver coal. Compl. at ¶19. At the time of formation, Defendant/Third-Party Plaintiff Arkady Sirotovsky ("Sirotovsky") was offered 20% of the shares of the company. Compl. at ¶ 20.  He was appointed Vice-President and a director, his duties included traveling to Russia and Ukraine to negotiate with suppliers of coal, arranging for railroad transportation from Black Sea ports and for storage at the ports. Compl. at ¶ 20. Defendants/Third-Party Plaintiffs Mykhailo Fityak, Larissa Fityak, Adolf Gavrilov, and Lyudmila Adrianova are former contractors of Alexander Finance. Compl. at ¶¶ 36-40; Counterclaim at ¶ 2.

Third-Party Defendant Alexander Holding, LLC ("Alexander Holding") is a Delaware company organized by Sirotovsky, Uritsky, and Charoff on June 13, 1997 to own property located at 2708 Commerce Way, Philadelphia, Pennsylvania ("Property"). Compl. at ¶ 11, 78; Counterclaim at ¶¶ 16 -17. At the time of the formation, each of the partners held 33/13 % membership interest in Alexander Holding. Compl. at ¶ 77.

---

[1] The facts of this case are well-known to the court and are restated here only to the extent necessary to decide the present Motion to Dismiss Counterclaim as to Gene Burd.

Third-Party Defendant Commerce Way, Inc. ("Commerce Way") is a Pennsylvania corporation in the business of conducting wholesale and commodity trading and selling and was formed by Sirotovsky and Charoff on November 8, 2000 and is owned by them in equal (50%) parts. Counterclaim at ¶¶ 7, 22.

Third-Party Defendant Burd is a nominal Secretary of Alexander Finance, Alexander Holding, and Commerce Way. Counterclaim at ¶ 99.  He has never had any ownership, control, or decision-making rights in any of the companies.

## B.    RELEVANT ALLEGATIONS OF THE COMPLAINT

Plaintiff Alexander Finance C.D. Inc. ("Alexander Finance") commenced this RICO action on July 22, 2002 by filing a Verified Complaint alleging the violation of 18 U.S.C. § 1962 (c) and 18 U.S.C. § 1962 (d) for conspiracy, breach of fiduciary of an officer and director, breach of duty of loyalty of an employee, common law fraud, conversion, unjust enrichment, imposition of constructive trust, breach of contract and civil conspiracy.

As set forth in the Verified Complaint, Defendant/Third-Party Plaintiff Arkady Sirotovsky with the assistance of the other Defendants, defrauded Alexander Finance by invoicing for fabricated consulting services and diverting over $670,000 to bank accounts outside the United States and then back to bank and investment accounts in the United States.  Compl. at ¶1.   Due to the fraud, Alexander Finance paid for fabricated services and expenses which funds were then diverted to accounts controlled by Sirotovsky and other defendants.  Compl. at ¶¶ 21 – 101.

In late 2001, Alexander Finance became suspicious that the funds which were wired to Russia and Italy at Sirotovsky's direction, were not used for business purposes

and, instead, diverted to the bank accounts in Hungary and then on to the United States. Ultimately, in 2002, Alexander Finance obtained information which evidenced that the funds that were wired out by Plaintiff at Sirotovsky's direction for purported business expenses generally corresponded to the funds were wired into Defendants' bank accounts in the United States. The instant suit followed.[2]

### C.    FACTS RELATED TO THE DEFENDANTS' COUNTERCLAIM AS RELEVANT TO GENE BURD

On September 23, 2002, all of the Defendants/Third-Party Plaintiffs filed a Counterclaim against eight Third-Party Defendants, including Andrew Charoff, Eugene Uritsky, and Gene Burd.  The Counterclaim is nothing more than an offshoot of the same basic controversy between the parties, by means of which Sirotovsky, whose claims lack any substance or evidentiary support, aims at getting back yet again at former fellow members of the closely-held corporations after the relationship between them went sour and involving in the fight new parties in order to extort any settlement.

The relevant facts are as follows:

From 1995, Charoff, Uritsky, and Sirotovsky, have been business partners, involved into operating a number of companies. On June 13, 1997, Charoff and Uritsky and Sirotovsky formed Alexander Holding, to purchase property located at 2708 Commerce Way, Philadelphia, Pennsylvania (the "Property"). Compl. at ¶¶ 77-78; Counterclaim at ¶¶ 16-17. Thereafter, Alexander Holding obtained a loan for $1,530,000 which was secured by a mortgage on the Property and on which Sirotovsky and Charoff executed a personal guarantee agreement. Compl. at ¶ 84; Counterclaim at ¶¶ 23-24.

---

[2] Defendants' Motion to Dismiss the Complaint was denied by this Court on September 3, 2002.

On or about December 31, 1998, Uritsky, Charoff and Sirotovsky, agreed in writing that Uritsky would transfer all of his interest in Alexander Holding and Alexander Finance in equal parts to Charoff and Sirotovsky for $1,000 each but that he retained the option to repurchase his interest in Alexander Holding and Alexander Finance. Compl. at ¶ 82; Counterclaim at ¶¶ 18-19.  On October 15, 2001 Uritsky exercised his option to repurchase his share of the companies thereby Uritsky became the owner of 33 1/3% of Alexander Finance and Alexander Holding. Compl. at ¶ 90.  Sirotovsky alleges that such transfer was in violation of Alexander Holding Amended and Restated Operating Agreement entered into by Charoff and Sirotovsky on January 1, 1999, when each of them became a 50% shareholder in Alexander Holding. Counterclaim at ¶¶ 20, 26.

In August, 2001, Alexander Finance set up an escrow account for indemnification of directors and officers and deposited in this account the sum of $100,000 (the "Escrow Account"). Compl. at ¶ 87; Counterclaim at ¶ 25. Throughout October 2001, Alexander Holding was experiencing difficulties with cash flow because the leasing revenues were not sufficient to cover mortgage payments, therefore Uritsky and Charoff proposed on numerous occasions that the Escrow Account of Alexander Finance be closed and the funds be used to pay Alexander Holding's mortgage obligations to avoid default on the loan.  Compl. at ¶ 92.

On November 7, 2001, Uritsky, Charoff and Sirotovsky had a meeting at which Uritsky and Charoff insisted that the Escrow Account be closed and the funds be used to pay Alexander Holding's mortgage obligations. At the meeting, Sirotovsky stated that he did not want to have the escrow closed because he has criminal charges pending against him in Russia.  On November 10, 2001, Uritsky and Charoff met to discuss current

business issues including pending mortgage payments and the possibility of Sirotovsky's

use of funds in the Escrow Account to defend himself against criminal charges in Russia

instead of payment of Alexander Holding mortgage obligations. On November 10, 2001,

Sirotovsky physically attacked Charoff and subsequently filed a false criminal complaint

against Charoff claiming that Charoff attacked him.[3] On November 13, 2001, Sirotovsky

was fired from Alexander Finance and Alexander Holding.   Compl. at ¶¶ 93-97.

The Counterclaim alleges that Sirotovsky's former business partners wrongfully

conspired to discharge him from his position as Vice-President of Alexander Finance.

Counterclaim at ¶¶ 29-30.  Sirotovsky further alleges that he has been forcibly excluded

from the Property located at 2708 Commerce Way, Philadelphia, Pennsylvania, of which

he is a one-half owner and a personal guarantor of the mortgage held on the property.

Counterclaim at ¶ 34.  Throughout October and November of 2001, Sirotovsky

challenged the use of Alexander Finance corporate funds by Uritsky and Charoff from

the Escrow Account for purposes unrelated to the indemnification of officers and

directors in violation of the terms of the "Unanimous Consent" dated August 11, 2001.[4]

Counterclaim at ¶ 27.  Sirotovsky and all other Defendants filed this Counterclaim "to

rectify and prevent the manifest injustice caused by Uritsky, Charoff and Burd's willful,

---

[3] Charoff was acquitted of all false criminal charges brought by Sirotovsky. *See Commonwealth v. Charoff*, Case No. MC 0111-26444 1/1, Philadelphia Municipal Court, Criminal Section. A civil case for assault and battery brought by Sirotovsky against Charoff was stayed on July 30, 2002 pending the resolution of the criminal case and never reopened by Sirotovsky, proving futility of his allegations. *See Sirotovsky et.al. v. Charoff*, Case ID: 020402562, Philadelphia Court of Common Pleas.

[4] The purported Unanimous Consent was never quoted in relevant parts or attached as an Exhibit to the Counterclaim.

continuous and malicious exclusion of Sirotovsky from the physical premises of the Property, from ownership interest and rights in Alexander Finance, Alexander Holding and Commerce Way, dissipation of assets of Alexander Finance, Alexander Holding and Commerce Way, and resulting economic damages." Counterclaim at ¶ 40. Admittedly, all other Defendants simply do not a have grounds to file the Counterclaim.

Based on these allegations, Defendants/Third-Party Plaintiffs bring claims against Gene Burd for the violation of 18 U.S.C. § 1961 *et. seq.* (Count I); breach of fiduciary duty (Count II), breach of contract (Count III); legal and equitable fraud (Count IV); conversion (Count V); imposition of constructive trust (Count VI); derivative action (Count VII); and wrongful use and abuse of process, wrongful injunction and attachment (Count IX).

### III.    LEGAL ARGUMENT

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the [counterclaim].  The question, then, is whether the facts alleged …, even if true, fail to support the . . . claim. The pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citations and internal quotations omitted). "Bald assertions" and "legal conclusion" need not be credited by the Court when making this determination. *In Re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997). "Moreover, while [the] standard of review requires [the court] to accept as true all factual allegations in the [counterclaim], [the court] need not accept as true unsupported conclusions and unwarranted inferences. Courts have an obligation in matters before them to view the [counterclaim] as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. [Courts] do draw on the allegations of the [counterclaim], but in a realistic, rather than a slavish, manner."  *Maio v. Aetna Inc.*, 221 F.3d 472, 485 (3d Cir. 2000) (citations and internal quotations omitted).

As set forth below, Defendants/Third-Party Plaintiffs fail to satisfy even this liberal pleading standard as to Third-Party Defendant Gene Burd, as it is certain that in the instant matter "no relief could be granted under any set of facts that could be proved consistent with the allegations [of the Counterclaim]." *See Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).[5]

---

[5] The Defendants' Counterclaim against Burd and other Counterclaim Defendants is a misnomer.  Burd and other Counterclaim Defendants except Alexander Finance have not been parties to the instant action and cannot be joined by way of a counterclaim.  *See*

A.    **THE DEFENDANTS/THIRD-PARTY PLAINTIFFS FAILED TO ADEQUATELY PLEAD A RICO CAUSE OF ACTION**

The Defendants/Third-Party Plaintiffs have failed to adequately plead a RICO cause of action because the Counterclaim fails to plead a cognizable "RICO enterprise", a pattern of racketeering activity, and the Third-Party Plaintiffs' general allegations of fraud do not comply with Fed. R. Civ. P. 9(b) and their specific allegations regarding particular transactions do not amount to fraud.

The RICO statute provides that:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). It is also unlawful for anyone to conspire to violate § 1962(c). *See* 18 U.S.C. § 1962(d).

In order to plead a violation of RICO, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *See Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 87 L. Ed. 2d 346, 105 S. Ct. 3275 (1985).

1.    **Defendants/Third-Party Plaintiffs Failed to Plead a Cognizable RICO Enterprise**

Defendants/Third-Party Plaintiffs failed to plead a cognizable RICO enterprise.

An "enterprise" is defined to include "any individual, partnership, corporation,

---

Fed. R. Civ. P. 13(a).  A proper means to join a third party would be pursuant to Fed. R. Civ. P. Rule 14, 19 or 20.

association, or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4).

The Counterclaim purports to allege that "Alexander Finance, Alexander Holding, Commerce Way, Kogan & Company and Penn Financial Group … are enterprises which are engaged in or the activities of which affect interstate or foreign commerce." Counterclaim at ¶ 46.

However, "[t]he defendant "person" charged with violating the statute cannot be the same entity as the alleged "enterprise." The statute, by its plain language, requires that the defendant be employed by or associated with an enterprise. *See B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633 (3d Cir. 1984). Thus, the Defendants cannot "simultaneously be both the defendant and the enterprise, because it would be illogical to say that a corporation was employed by or associated with itself." *Id*. at 633. *See also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993) (a company was not a distinct enterprise**,** separate from its owners, to impose liability under RICO**);** *Tierney & Ptnrs, Inc. v. Rockman*, 274 F. Supp. 2d 693, 699 (E.D.Pa. 2003) (same).

### 2.    Defendants/Third-Party Plaintiffs Failed to Plead A Pattern of Racketeering Activity

To successfully plead a civil RICO violation, a plaintiff must allege either "a pattern of racketeering activity" or the "collection of an unlawful debt." *See H.J. Inc. v. Northwestern Bell Tele. Co.*, 492 U.S. 229, 232, 106 L. Ed. 2d 195, 109 S. Ct. 2893 (1989); *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143, 154, 97 L. Ed. 2d 121, 107 S. Ct. 2759 (1987) ("The heart of any RICO complaint is the allegation of a pattern of racketeering.").

Racketeering activity encompasses a wide variety of prohibited conduct, including acts of mail fraud and wire fraud. 18 U.S.C. § 1961(1). A pattern of racketeering activity "requires at least two acts of racketeering activity," i.e. two acts of mail or wire fraud, within ten years. 18 U.S.C. § 1961(5). However, "while two acts are necessary, they may not be sufficient." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 n.14 (1985). The Supreme Court, noting that a pattern cannot be formed by "sporadic activity," has established a two-prong framework for considering the existence of a pattern. *H.J. Inc.*, 492 U.S. at 239. Proof of a pattern requires both "a relationship" among the predicate acts, and a showing that the acts "amount to or pose a threat of continued criminal activity." *Id.*

Plaintiffs have not made the requisite showing. Here, Plaintiffs vaguely refer to acts of mail fraud, wire fraud, and financial institution fraud, Counterclaim at ¶¶ 47-55, but they fail to specify these alleged acts, or to explain how each of these alleged acts furthered the scheme to defraud or was incident to an essential part of that scheme.

Although Plaintiffs' Counterclaim contains several allegations of money transfer, alleged to be fraudulent, it fails to provide details regarding the transfers, via mail or wire. For example, although Plaintiff claims that, in 1996 and 1997, Uritsky and Charoff took money in the amount of 1.8 million to Alexander Finance, Counterclaim at ¶ 52, Plaintiff fails to explain how this isolated transmission furthered the Defendants' overall fraudulent scheme.  In this district, however, such details are necessary to properly allege predicate acts under RICO.  *See, e.g.,  Tierney & Ptnrs, Inc. v. Rockman*, 274 F. Supp. 2d 693, 697-698 (E. D. Pa. 2003) (dismissing RICO complaint for failure to properly plead the predicate acts noting that "plaintiff must  identify each separate predicate act, of

which Plaintiff has knowledge, indicating the date, the particular person or entity who

sent the [transmission] in question, the recipient, and, most importantly, the way in which

the particular transmission furthered the pattern of racketeering activity and the overall

fraudulent scheme."); *see also Gintowt v. TL Ventures*, 226 F. Supp. 2d 672, 673-674

(E.D.Pa. 2002) (dismissing RICO complaint without prejudice because the plaintiff had

provided insufficient detail regarding alleged predicate acts of mail and wire fraud).

Accordingly, Defendants/Third Party Plaintiffs' RICO claim fails.

### 3.    Defendants/Third-Party Plaintiffs Allegations of Mail and Wire Fraud Are Not Pled With Sufficient Particularity

Finally, where, as here, plaintiffs rely on mail, wire, and financial institution fraud

as a basis for a RICO violation, the allegations of fraud must comply with Fed.R.Civ.P.

9(b), which requires that allegations of fraud be pled with specificity. *See Saporito v.*

*Combustion Eng'g, Inc.*, 843 F.2d 666, 673 (3d Cir. 1988), *vac. on other grounds*, 489

U.S. 1049 (1989).

In order to satisfy Rule 9(b), plaintiffs must plead with particularity "the

'circumstances' of the alleged fraud in order to place the defendants on  notice of the

precise misconduct with which they are charged, and to safeguard defendants against

spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v.*

*Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Plaintiffs may satisfy this

requirement by pleading the "date, place or time" of the fraud, or through "alternative

means of injecting precision and some measure of substantiation into their allegations of

fraud." *Id*. (holding that a plaintiff satisfied Rule 9(b) by pleading which machines were

the subject of alleged fraudulent transactions and the nature and subject of the alleged

misrepresentations). Plaintiffs also must allege who made a misrepresentation to whom

and the general content of the misrepresentation. *See Saporito*, 843 F.2d at 675; *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658-59 (3d Cir. 1998); *Klein v. General Nutrition Cos.*, 186 F.3d 338, 345 (3d Cir. 1999).

In the present case, the Counterclaim states that "the fraud … represented a scheme and artifice to defraud Defendants which was facilitated by use of the United States mail and wire." Counterclaim at ¶ 47. However, the RICO cause of action does not describe a *single* transaction of mail or wire transmission.

The conclusory allegations of the Counterclaim do not satisfy Rule 9(b). They do not indicate the date, time, or place of any misrepresentation; nor do they provide "an alternative means of injecting precision and some measure of substantiation into the fraud allegations. Nor do these allegations indicate which defendant(s) made misrepresentations to which plaintiff(s). None of the allegations in the Counterclaim is supported by any evidence and is purely speculative. If the particularity requirements of Rule 9(b) are to have any effect, it must be to bar conclusory allegations such as these, based on nothing more that conjecture and innuendo.

### B.    NONE OF THE CLAIMS STATED BY DEFENDANTS IS BASED ON THE ALLEGED ACTIONABLE CONDUCT BY BURD

As to the remaining counts, Defendants/Third-Party Plaintiffs fail to state claims upon which relief can be granted. One can quickly surmise that their action against Burd is nothing more but a "spiteful vengeance mission" for diligently pursuing an action against those who diverted corporate funds and has no purpose but to harass, vilify, and embarrass him, or to extort a settlement because apart from general conclusory and scandalous accusations of Gene Burd's purportedly "actionable" conduct, Counterclaim

does not contain a <u>single</u> separate or concrete example of such. These allegations "need not be credited by the Court," *In Re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997), *see also FDIC v. Parkway Exec. Office Ctr.*, 1997 U.S. Dist. LEXIS 12318, at *9-10 (E.D. Pa. 1997) ("When deciding a 12(b)(6) motion to dismiss[], legal conclusions, deductions or opinions [of the Counterclaim] couched as factual allegations are not given a presumption of truthfulness.") (citations omitted).

In fact, the Counterclaim is so vague and ambiguous that it is extremely difficult for the Defendant Burd to reasonably frame a pleading. However, to the extent that Burd can form a response in good faith, in the instant matter "no relief could be granted under any set of facts that could be proved consistent with the allegations [of the Counterclaim]." *See Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990).

      1.     **Defendants/Third-Party Plaintiffs Did Not State A Cause of Action Against Gene Burd for Breach of Fiduciary Duty in Counts II and VII**

          a.     **Defendants/Third-Party Plaintiffs Do Not Have Standing to Bring A Cause of Action for Breach of Fiduciary Duty Against Gene Burd**

Under Section 1717 of the Pennsylvania Business Corporations Law**,** suits brought alleging officers' failure to meet the standard of care owed to the corporation cannot "be enforced directly by a shareholder." *See* Pa. Cons. Stat. §1717 ("The duty of the board of directors, committees of the board and individual directors under section 1712 (relating to standard of care and justifiable reliance) is solely to the business corporation and may be enforced directly by the corporation or may be enforced by a shareholder, as such, by an action in the right of the corporation, and may not be enforced directly by a shareholder or by any other person or group.")

Furthermore, under Pennsylvania law, a shareholder cannot ordinarily bring an action on behalf of the corporation without first making demand on the board of directors to pursue the action. *Cuker v. Mikalauskas*, 692 A.2d 1042, 1049-50 (Pa. 1997). "Demand on the board should be excused only if the plaintiff makes a specific showing that irreparable injury to the corporation would otherwise result, and in such instances demand should be made promptly after commencement of the action." *Id.* at 1050.

It is undisputed that plaintiffs did not make demand on the board of directors of Alexander Finance, Alexander Holding, or Commerce Way before filing suit or thereafter. Plaintiff's allegations that "no demand has, or could have successfully been made," Counterclaim at ¶102, does not confer standing on Plaintiffs. As held in *Warden v. McLelland*, 288 F.3d 105, 113 (3d Cir. 2002), "[a]lthough plaintiffs may have properly pled futility in making a prior demand, Pennsylvania law <u>no longer recognizes a futility exception</u>." (emphasis ours).

The only possible exception to lack of standing, would be if Defendants/Third-Party Plaintiffs alleged that they, and not the corporations, were uniquely injured, However, they have not done so. Accordingly, they lack standing to bring a claim for breach of fiduciary duty against Gene Burd. *See, e.g.*, *Malmros v. Jones*, 2004 U.S. Dist. LEXIS 4371 (E.D. Pa. Feb. 27 2004) (because plaintiff failed to allege that defendant former director's breach of fiduciary duty and self-dealing uniquely injured him and not the corporation, he did not have standing to pursue his claims in an action against the former director); *AMP Incorporated v. Allied Signal, Inc. (In re AMP Shareholder Litigation)*, 1998 U.S. Dist. LEXIS 15617, at *12 (E.D. Pa. Oct. 8, 1998) (denying claim for breach of fiduciary duty where the shareholders group directly challenged the

directors' decision making processes); *Hubner v. Schoonmaker*, 1991 U.S. Dist. LEXIS

4866, (E.D. Pa. April 9, 1991)(shareholders had no standing to assert claims against a

director for intentionally mismanaging the corporation for his own benefit because claims

belonged to the corporation and not plaintiffs as individuals).

Moreover, none of the Defendants/Third-Party Plaintiffs, except Sirotovsky, have

ever been shareholders or members of the Third-Party Defendant companies.  Their claim

simply has no basis because third parties cannot bring a claim for breach of fiduciary

duty.  *See* Pa. Cons. Stat. §1717.

> **b.** **Defendants/Third-Party Plaintiffs Failed to State A Cause of Action for Breach of Fiduciary Duty Against Gene Burd**

Even assuming *arguendo* that Defendants/Third-Party Plaintiffs do have standing,

they have failed to state a cause of action for breach of fiduciary duty against Gene Burd.

Lacking any substantive basis to their claims, Plaintiffs grasp at straws and resort

to laughable general allegations that Burd breached his fiduciary duty "to the entities as

well as to Sirotovsky, by, among other things, preventing Sirotovsky from receiving any

information concerning the operation and/or finances of the businesses, operating the

businesses for their own personal benefit without regard for the ownership interests of

their fellow shareholder/member, and misusing corporate funds for unauthorized

expenditures"  and  further that "Charoff, Uritsky and Burd committed fraud, gross

neglect and inattention, breach of trust and fiduciary duty, willful and fraudulent

mismanagement and malfeasance in the control of the affairs, interests and transactions

of Alexander Finance, Alexander Holding and Commerce Way entities in that they

fraudulently and improperly gave money to family and friends and took money to

themselves, loaned money of the defendant Alexander Finance, Alexander Holding and

Commerce Way entities to themselves and/or for their own use, including personal

defense costs, on worthless securities, for personal gain, aggrandizement and benefit, and

in fraud of Plaintiff's rights." Counterclaim at ¶¶ 59, 101. This is all Plaintiffs have, and

it is just not enough.

Putting aside that those statements are nothing more that conclusory allegations,

which should not be credited by the court, the Counterclaim does not allege any <u>single</u>

<u>action by Gene Burd</u> committed in violation of his breach of fiduciary duties as a

Secretary to Alexander Finance, Alexander Holding and Commerce Way corporations.

Nowhere in his Counterclaim does Sirotovsky mention that Burd exercised any control

over any of the companies. Notably, Sirotovsky does not even allege any actionable

conduct by <u>any</u> of the Third-Party Defendants that was not in the best interest of the

corporations. Sirotovsky's sole claim is that "Sirotovsky has been damaged and will

continue to be damaged unless Defendants are restrained from any further wrongful

conduct." Counterclaim at ¶ 61.  Needles to say that other Defendants/Third Party

Plaintiffs fail to set forth a single word explaining how exactly they have been damaged

or what is the basis of their claim.

Defendants/Third Party Plaintiffs contentions defy common sense. On the

contrary, Defendants acted in the <u>best interests</u> of Alexander Finance, Alexander

Holding, and Commerce Way by protecting the companies after learning that Sirotovsky

with the assistance of the other Defendants, defrauded Alexander Finance by invoicing

for fabricated consulting services and diverting over $670,000  of the corporation's assets

to himself and causing Alexander Finance to lose its business. Compl. at ¶ 1.

Put simply, Plaintiffs did not state a cause of action against Gene Burd for breach of fiduciary duty.

First, Gene Burd's duties were to the corporations, not to Sirotovsky. While in Pennsylvania, as in most jurisdictions, officers and directors of a corporation stand in a fiduciary relation to the corporation, and must discharge the duties of their positions in good faith and with the diligence, care, and skill which ordinarily prudent persons would exercise under similar circumstances, 15 Pa.Cons.Stat.Ann. § 1404 (Purdon's Supp. 1984); *Brown v. Presbyterian Ministers' Fund*, 484 F.2d 998, 1004 (3d Cir. 1973); *United States v. Gleneagles Investment Co., Inc*., 565 F. Supp. 556, 589 (M.D. Pa. 1983); *Bellis v. Thal*, 373 F. Supp. 120 (E.D. Pa. 1974); *Wolf v. Fried*, 473 Pa. 26, 373 A.2d 734 (1977), it is the directors, and not the shareholders, who must manage the business affairs of the corporation, and the directors of a corporation "have the power to bind [the corporation] by any contract which is within its express or implied powers, and which in their judgment is necessary or proper in order to carry out the objectives for which the corporation was created . . . without consulting with or obtaining the consent of the stockholders." 2 W. Fletcher *Cyclopedia of the Law of Private Corporations*, § 505, pp. 515 (rev. perm. ed. 1981). (emphasis added). *See also, Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 343, 56 S. Ct. 466, 481, 80 L. Ed. 688 (1936) (Brandeis, J., concurring); *Matter of Penn Central Transportation Co*., 596 F.2d 1155, 1166 (3d Cir. 1979); *Severance v. Heyl & Patterson*, 123 Pa. Super. 553, 187 A. 53 (1936).

Furthermore, it is an axiomatic principle of corporate law that courts are reluctant to interfere in the internal management of a corporation" at the behest of a shareholder, *Wolf v. Fried*, 373 A.2d at 734. If the shareholders conclude that the judgment of the

directors in pursuing a particular course of action is not sound, their remedy lies in the replacement of the directors through the corporate voting process -- they may vote the management out. *See Enterra Corp. v. SGS Associates*, 600 F. Supp. 678, 685-686 (E.D. Pa. 1985) *citing* M. Lipton, *Takeover Bids and the Targets' Boardroom*, 35 Bus. Law. 101, 116 (1979).

Second, assuming *arguendo*, that Defendants' actions did result into damage to the corporations, which it did not, there is nothing in the Counterclaim substantiating a claim that Gene Burd violated his fiduciary duties as a Secretary. Pennsylvania law provides that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefore; but that an officer of a corporation who takes no part in the commission of the tort committed by the corporation is not personally liable to third persons for such a tort, nor for the acts of other agents, officers or employees of the corporation in committing it, unless he specifically directed the particular act to be done or participated, or cooperated therein. *Wicks v. Milzoco Builders, Inc.*, 470 A.2d 86, 90 (Pa. 1983) (citations omitted). The Counterclaim contains <u>no single concrete factual illustration of any wrongful act or transaction performed by Mr. Burd</u> which resulted in damage to the corporations or was in bad faith or self-interest. Accordingly, the breach of fiduciary duty Counts against Gene Burd should be dismissed. *See Thompson v. Glenmede Trust Co.*, 1993 U.S. Dist. LEXIS 7677 (E.D. Pa. 1993) *citing Newman v. Forward Lands Inc.*, 418 F. Supp. 134, 136 (E.D. Pa. 1976). ("With respect to the defendant directors and officers of the corporation, the plaintiffs have not specifically alleged that these individuals have participated in the breach of the fiduciary duty. The plaintiffs must plead that each defendant director or officer actively

participated in a positively wrongful act intendedly and directly operating injuriously to the prejudice of the [plaintiffs].").

> ### 2.      Defendants/Third-Party Plaintiffs Did Not State A Cause of Action Against Gene Burd for Breach of Contract in Count III

Defendants/Third-Party Plaintiffs fail to state a claim upon which relief can be granted for breach of contract as to Gene Burd, because Mr. Burd was not a party to any of the contracts described in the Counterclaim. *See, e.g., Trueposition, Inc. v. Allen Telecom*, 2003 U.S. Dist. LEXIS 881, at *5 (D. Del. 2003) ("a non-party to a contract generally is not bound by the contract and thus can not breach the contract."); *Traffas v. Bridge Capital Investors II*, 1993 U.S. Dist. LEXIS 12028, at *3 (D. Kan. 1993) ("It would be a novel holding for the court to rule that a breach of contract action can be maintained against a person who is not a party to the contract being sued upon ... A party to a contract cannot sue a person who is not a party to that contract for breach of contract."); *Credit Gen. Ins. Co. v. Midwest Indem. Corp.,* 916 F. Supp. 766, 772 (N.D. Ill. 1996) (finding "ludicrous" the defendants' contention that a non-party to a contract can breach that contract).

> ### 3.      Defendants/Third-Party Plaintiffs Failed to Plead Fraud With Requisite Particularity in Count IV

Defendants/Third-Party Plaintiffs claim for legal and equitable fraud is defective for lack of specificity. When pleading fraud or mistake, "the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Although a defendant's knowledge or other condition of mind may be averred generally, a party alleging fraud must "still allege facts that show the court their basis for inferring that the

defendants acted with 'scienter.'" *In re Burlington Coat Factories Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997). When multiple defendants are accused of fraud, the complaint must also separately allege each defendant's fraudulent conduct. *See In re Home Health Corp. of America Sec. Litig.*, 1999 U.S. Dist. LEXIS 1230, at *20 (E.D. Pa. Jan. 29, 1999); *Rosenbaum & Co. v. H.J. Myers & Co.*, 1997 U.S. Dist. LEXIS 15720, at *3 (E.D. Pa. Oct. 9, 1997). It is insufficient to attribute individual acts of fraud to all defendant's generally. *See Vicom, Inc. v. Harbridge Merch. Servs. Inc.*, 20 F.3d 771, 777-78 (7th Cir. 1994) (allegations that misrepresentations were made with knowledge and consent of all defendants "falls short" of Rule 9(b) standards); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'").

Sirotovsky's fraud claims are predicated on the alleged misrepresentations of Charoff, Uritsky and Burd. Counterclaim at ¶ 77. It is impossible to discern from these conclusory allegations and deficient pleadings Mr. Burd's participation in or knowledge of any fraudulent acts. Plaintiffs thus have failed to make specific averments of Burd's individual complicity in fraudulent conduct. *See De Lage Landen Fin. Servs. v. Cardservice Int'l, Inc.*, 2001 U.S. Dist. LEXIS 9692, at * 9-10 (E.D. Pa. 2001) (dismissing complaint for failure to plead fraud with requisite particularity).

### 4.    Defendants/Third-Party Plaintiffs Did Not State A Cause of Action Against Gene Burd for Conversion in Count V

Under Pennsylvania law, conversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification. *Pioneer Commerical Funding Corp and Bank One, Texas N.A. v. American Financial Mortgage Corp*, 2002 Pa. Super. 68, 797 A.2d 269 (2002).

Defendants/Third-Party Plaintiffs have failed to plead any facts or present any evidence as to Mr. Burd's actions related to depriving them of any property that lawfully belonged to them.

> **5.     Defendants/Third-Party Plaintiffs Did Not State A Cause of Action Against Gene Burd for Imposition of Constructive Trust in Count VI**

Defendants/Third-Party Plaintiffs fail to state a claim upon which relief can be granted for imposition of constructive trust as to Gene Burd. By definition, in Pennsylvania "a constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Roberson v. Davis*, 397 Pa. Super. 292, 296 (Pa. Super. 1990) (citations omitted). Burd does not possess, hold legal title or exercise any control over the assets that are purportedly misappropriated.  Accordingly, this cause of action cannot be asserted against him.

> **6.     Defendants/Third-Party Plaintiffs Did Not State A Cause of Action Against Gene Burd for Wrongful Use and Abuse of Process, Wrongful Injunction and Attachment in Count IX**

The scandalous accusations as to wrongful abuse of process, wrongful injunction and attachment contain solely general conclusory and scandalous claims unsupported by a single speck of evidence or factual basis.  This is all Defendants/Third-Party Plaintiffs have, and it is just not enough. These allegations "need not be credited by the Court," *In Re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997), and should be dismissed. *See FDIC v. Parkway Exec. Office Ctr.*, 1997 U.S. Dist. LEXIS 12318, at *9-10 (E.D. Pa. 1997) ("When deciding a 12(b)(6) motion to dismiss[], legal

conclusions, deductions or opinions [of the Counterclaim] couched as factual allegations are not given a presumption of truthfulness.") (citations omitted).

### C.    DEFENDANTS/THIRD-PARTY PLAINTIFFS SHOULD BE DIRECTED TO FILE A MORE DEFINITE STATEMENT

Based on the failure to identify any actionable conduct by Third-Party Defendant Gene Burd, the Counterclaim should be dismissed as to him. In the alternative, Gene Burd moves pursuant to Fed.R.Civ.P. 12(e), for an Order requiring Plaintiffs to file a more definite statement alleging specific facts to support their claims against him.

When, as here, "an allegation rises to the level of "unintelligibility" and the answering defendant cannot frame even a "simple denial in good faith, without prejudice to himself," the Defendants/Third-Party Plaintiffs should be directed to file a "more definite statement." *See* Fed.R.Civ.P. 12(e); *Jeremy M. v. Central Bucks Sch. Dist.*, 2001 U.S. Dist. LEXIS 1863, at *2 (E.D.Pa. Jan. 31, 2001); *Maremont Corp. v. Classic Distribs., Inc.*, 1999 U.S. Dist. LEXIS 8829 at*2 (E.D.Pa. June 7, 1999). As detailed above, Defendants/Third-Party Plaintiffs have not alleged any specific facts to support their claims against Gene Burd.[6]  At this time, Gene Burd requests this Court to direct Defendants/Third-Party Plaintiffs to do so.

---

[6] Putting aside the deficiency of substance of the claims asserted in the Counterclaim, the Defendants/Third-Party Plaintiffs' Counterclaim was filed on behalf of  all original Defendants, including Mikhaylo and Larissa Fityak, Adolf Gavrilov, and Lyudmila Andrianova.  Yet, the Counterclaim contains no allegations whatsoever of Burd's allegedly wrongful conduct in relation to them. Not only it would be impossible for Burd to produce any response to these non-allegations, it is unfeasible to envision any innocent explanation for Defendants/Third-Party Plaintiffs' filing of such a defective pleading but for the purpose of harassing Gene Burd.

**IV.    CONCLUSION**

For the foregoing reasons, Third-Party Defendant Gene Burd's Motion to Dismiss should be granted.  To the extent that the Court denies the motion, Third-Party Defendant requests the Court to direct Third-Party Defendant to file a More Definite Statements and give Mr. Burd an opportunity to properly respond to the allegations.

**MARKS & SOKOLOV, LLC.**

/s/ Gene M. Burd
By: Gene M. Burd, Esq.
1835 Market Street
28th Floor
Philadelphia, PA 19103
(215) 569-8901

Dated: August 9, 2004

## CERTIFICATE OF SERVICE

I, Maria Temkin, hereby certify that a true and correct copy of the Third-Party Defendant Gene Burd's Motion To Dismiss The Counterclaim As Against Him Pursuant to Fed.R.Civ.P. 12(b)(6) Or, Alternatively, For A More Definite Statement Pursuant To Fed.R.Civ.P. 12(e), along with the supporting Memorandum of Law and Proposed Order was served on August 9, 2004, via facsimile and first class mail as follows:

A. Charles Peruto, Esq.
Washington West Building
235 South 8th Street
Philadelphia, PA 19106

Richard L. Scheff, Esq.
Montgomery, McCracken, Walker & Rhoads
123 South Broad Steet
Philadelphia, PA 19109

Dante Mattioni, Esq.
Paul Kettunen, Esq.
Mattioni, Ltd.
399 Market Street, 2nd Floor
Philadelphia, PA 19106

Harvey A. Sernovitz, Esq.
Two Penn Center Plaza, Suite 910
1500 John F. Kennedy Blvd.
Philadelphia, PA 19102

**Marks & Sokolov, LLC**

By:    _____
Maria Temkin

Date:    August 9, 2004