UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER FINANCE C.D., INC.<br>　　　Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| ARKADY SIROTOVOSKY, et. al.,<br>　　　Defendants and Counter Plaintiffs | : | |
| | : | NO. 02-CV-4977 |
| v. | : | |
| | : | |
| PENN FINANCIAL GROUP, INC. et al.<br>　　　Counter Defendants. | : | |

**DEFENDANTS' RESPONSE TO MOTION TO DISMISS OF GENE BURD**

**A.   HISTORY OF PROCEEDINGS**

On Thursday, April 25, 2002 Arkady Sirotovsky initiated an action against Andrew Charoff, Eugene Uritsky, Alexander Finance C.D., Alexander Holdings, LlC and Commerce Way Inc. in the Court of Common Pleas, Philadelphia County, April Term 2002, No. 003964. Sirotovsky, Charoff and Uritsky were shareholders or members of the three business entity defendants. Sirotovsky sued for breach of fiduciary duty, appointment of a receiver, an accounting, dissolution and winding up, breach of contracts, legal and equitable fraud, conversion, imposition of a constructive trust, and derivatively as a shareholder.

In July 2002, Alexander Finance brought the herein Complaint in the Eastern District of Pennsylvania. As the Court is aware, Defendants Larissa Fityak and Lyudmila Andrianova are the sisters of Mrs. Sirotovsky and Mr. Fityak is her brother-in-law. The action alleges that the Defendants pilfered monies from Alexander Finance and illegally laundered them in security

investment accounts managed by Penn Financial Services, Inc. and /or Michael Kogan.

Thereafter, on September 3, 2002, Charoff, Uritsky and the three business entities filed an Answer and Counterclaim in the Court of Common Pleas action against Sirotovsky claiming he organized a scheme to defraud Alexander Finance by invoicing for fabricated consulting services and diverting several hundred thousand dollars to bank accounts outside the United States and then back to banks and investment accounts in the United States which resulted in Alexander Finance's inability to sell its products at competitive prices and led to the loss of its business. They accused Sirotovsky of "Phantom Services and Expenses" and that bank accounts were established in Hungary to secrete the stolen funds, in the names of Mykhaylo Fityak, Lyudmila Andrianova, Ms. Fityak, and Adolf Gavrilov, which funds were later deposited with Penn Financial with Power of Attorney given to Mr. Sirotovsky over these accounts.  He also allegedly caused accounts to be opened in Citibank, New York in the names of Mrs. Fityak and Mrs. Sirotovsky from the diverted Funds.  The Counterclaim contained Counts for Breach of Fiduciary Duties as Officer and Director, Breach of Loyalty as an employee, Fraud, Conversion Unjust Enrichment, Constructive Trust, and Breach of Contract.

It was only on September 23, 2002 that defendants filed their Answer and Counterclaim in the herein action.  Since by filing the herein Complaint Plaintiffs had successfully Federalized their Court of Common Pleas counterclaims, Defendants had no choice but to file a Counterclaim in this case.

As such, the net result is that the Complaint in the Court of Common Pleas action became the Counterclaim in the herein action in the Eastern District of Pennsylvania and the Court of Common Pleas Counterclaim is the Complaint in the herein action in the Eastern District of

Pennsylvania.

**B.     THE MOTION TO DISMISS THE COUNTERCLAIM SHOULD BE DENIED UNDER THE LIBERAL PLEADING STANDARD ENDORSED MR. BURD AND ACCEPTED BY THE COURT EARLIER.**

    **1.     Defendants Previous Motion to Dismiss and Burd's Response**

On August 12, 2002 Defendants filed a Motion to Dismiss the Complaint authored by Mr. Burd pursuant to Rules 9 (b) and 12(b) (6) on the grounds that the elements of fraud postulated had not been pleaded with the requisite particularly and that Plaintiff had failed to spell out an enterprise separate from the individual defendants that has an ongoing existence and organization district form the alleged predicate acts, and further failed to satisfy the requirement of continuity. It was noted that plaintiff alleged a scheme to defraud Alexander Finance by invoicing for fabricated consulting services and diverting over $670,000; however, Plaintiff never identified the fraudulent or sham invoices, what consulting services were fabricated, and what amounts were diverted.  Though it was alleged that Sirotovsky submitted sham invoices, not one invoice was described nor why it was a sham and what funds were diverted.  Plaintiff stated that it wired at various times an amount totaling $250,000, but then multiplied this amount to $670,000 without explanation.  Likewise, Plaintiff represented that it forwarded $158,500 to Merloni's account with Citibank in Italy, and claimed that these funds were secreted in Fityak's account and transferred [$154,500] to Fityak's account with Penn Financial; however, there was another miraculous multiplication since those same Merloni funds were also claimed to be the source of Andrianova's funds [$177,800] deposited with Penn Financial.

    It was also pointed out that the Complaint failed to allege the required predicate acts with the specificity required by Rule 9(b).  Defendants argued that the Complaint should be dismissed

because it failed to state a viable Rico count since it failed to identify a hierarchical organized crime enterprise separate from the defendants and failed to establish the required continuity and pattern of racketeering activities.  Defendants contended.

> Members of a family or fellow employees are not automatically transmogrified into a Rico enterprise every time they are alleged to do something allegedly criminal. People who already know one another and are accused of a crime do not automatically become Rico enterprises because they mail a letter, use the phone or transmit a facsimile...  The issue is whether the Defendants who already knew one another had, in addition, to create a separate criminal organization to do the alleged criminal acts and, if so, whether there is a threat they will strike another victim.

Defendants argued that FAMILY ENTERPRISE in Paragraph 110 of the Complaint appeared to be an oxymoron and that paragraph 110 actually suggested it was really Sirotovsky, a defendant, who was the enterprise, which of course is impermissible ("the boss and a general manager of the Family Enterprise who... masterminded the entire operation).

Likewise, where, as here, the association-in-fact alleged consisted of the employees, it is not regarded as a RICO enterprise.  It was contended by defendants that the scurrilous libel was, at best, a discrete conspiracy by employees to fleece plaintiff.  It was contended that no abiding criminal organization had been indicated apart from the defendants and their predicate acts.  It was pointed out that the scheme appeared to have covered only eight months which would not satisfy the closed end continuity requirement.  Further, there was only one alleged scheme and one alleged victim.

    **2.**    **Burd's Response and Liberal Standard**

In a Response to Defendants' Motion to Dismiss dated August 21, 2002 authored by Gene Burd, it was argued that the allegations of the Complaint had to be accepted as true for the purposes of a Motion to Dismiss, even though it was admitted that the Complaint did not list

every wire transfer diverted (p. 3). Mr. Burd then largely repeated what he had alleged.

Mr. Burd contended that the court will only dismiss a complaint if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, that the court must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the plaintiffs, the plaintiff may be entitled to relief; that Rico is to be liberally construed. It was contended that Plaintiff met this liberal pleading standard.

Mr. Burd contended that the scope of fraud under the mail and wire fraud statutes was broader than common law fraud, and that no misrepresentation of fact was required to establish a scheme to defraud.

Most importantly, Burd contended: (pp. 13, 14):

The Third Circuit has explained that Rule 9 (b) simply requires plaintiffs to plead with particularly the "circumstances" of the alleged fraud in order to place the defendants on notice of the misconduct with which they are charged... Allegations of "date, place, or time" fulfill these functions, but nothing in the rule requires them. A plaintiff is free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud. <u>Further, courts should be "sensitive" to the fact that application of the Rule 9 (b) prior to discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud"</u>. They should also respect the general simplicity and flexibility of the Federal Rules (emphasis added)
Rule 9(b) permits allegations upon information and belief if an underlying factual predicate is alleged...
    Defendants argument that Plaintiff has not identified "specific facts" to indicate acts of fraud is nonsense. Plaintiff has specifically alleged that the Defendants committed various acts of mail and wire fraud, including wires which were fraudulent themselves. For the purposes of this Motion, the court must accept these allegation as true" (p. 14).

Mr. Burd also pointed out that "all defendants are liable for the acts of co-conspirators"(p. 19).

Thus, in addressing Mr. Burd's present motion, the specific allegations of mail are wire fraud

committed by the other defendants are imputed to Mr. Burd. *Noscitur a Sociis*. Mr. Burd stood by and did nothing when Charoff tried to kill Mr. Sirotovsky.

Burd also contended that the predicate acts for money laundering, illegal monetary transactions, and the Travel Act did not have to be plead with specificity (p. 20).

Plaintiff then claimed: (p. 30)

> Defendants have explicitly acknowledged that the Family Enterprise, as plead, is comprised of Defendants Sirotovsky, Mrs. Sirotovsky, Fityak, Gavrilov and Andrianova. Defendants have explicitly acknowledged that the Alexander Enterprise, as plead, is comprised Alexander Finance as controlled and operated by Sirotovsky. As such, Plaintiff have well plead both the Family Enterprise and the Alexander Enterprise... All that Plaintiff must do to plead adequately a Rico enterprise is identify the entities that he believes were the enterprises that have been marshaled against him. Plaintiff is not required to establish the enterprise requirement, or any other requirement, at the pleading stage; it is enough to identify the enterprise by stating that the defendants formed the enterprise.

On September 3, 2002, this court denied Defendants' Motion to Dismiss, apparently accepting the legal argument of Mr. Burd that a very liberal standard applies before discovery is completed, and that it is sufficient merely to plead or say a Rico enterprise without further evaluation. This liberal standard apparently is the law of the case, against which the present motion should be evaluated.

3.  **The Present Motion to Dismiss**

Counterclaim Defendant Gene Burd has moved to dismiss the counterclaim against him for failure to state a claim against him, failure to plead fraud with particularity and failure to properly plead the essential elements of a RICO. Mr. Burd's Motion is puzzling. He begans by observing:

> "This case is one of the many disturbing common lawsuits in which a relationship between the members of a closely-held corporation goes sour and they turn on everyone else around blaming for their problems" (p. 1).

In other words, he seems to be saying that this type of situation should not be federalized and transmogrified into a RICO action. However, in the next sentence (p. 2), he acknowledges that it was Alexander Finance who commenced this RICO action on July 22, 2002 and brought the matter to a Federal Court. However, it was Mr. Burd himself who drafted and filed the present complaint, and as a corporate officer of Alexander Finance endorsed its filing.

This action was totally unnecessary, since filing a Counterclaim in Court of Common Pleas was sufficient.

Under the liberal Burd standard previously accepted by the court to sustain the Complaint pleaded, Defendants' Counterclaim is likewise sufficiently specific to state a claim, and the essential elements of a RICO claim have been properly pled. In pertinent part, the Counterclaim refers to Defendant Michael Kogan, the convicted felon and the Affliant upon whom Mr. Burd relied in drafting Plaintiff's Complaint; a felon who, if intervener is correct, transmitted stolen funds to comply with this court's Escrow Order. The Counterclaim states specific allegations against Mr. Burd:

> 8. Defendant Michael Kogan who resides at 65 Golf Club Drive, Langhorne, PA,
> 19047, is the principal and owner of Defendants Kogan & Company, Inc., and Penn Financial Group, Inc., financial investment companies formerly located at 261 Old York Road, Suite 633, Jenkintown, PA, 19046 (Kogan Group). Since March or April 2002, the Kogan Group has moved into the office building of Alexander Finance and Holding at 2708 Commerce Way, Philadelphia, PA and colluded with the other counterclaim defendants and Plaintiff Alexander Finance to deprive Defendant Natalia Sirotovsky and the four foreign defendants of the use of their accounts held with the Kogan Group.
>
> 9. Gene M. Burd is an Officer, Director or Manager of all three businesses: Alexander Holding and Commerce Way who has colluded with Charoff and Uritsky as described below. Burd has an office at 2708 Commerce Way, Philadelphia and at 1835 Market Street, 28th Floor, Philadelphia, PA, 19103.

10. Upon information and belief, Charoff and Uritsky are dissipating the assets of
Alexander Finance, Alexander Holding and Commerce Way; misapplying business funds for their personal use, mismanaging the business, engaging in numerous acts of shareholder oppression described below and engaging in acts of racketeering in the course thereof.

25. On August 11, 2001, Alexander Finance placed $100,000.00 in an escrow account with Gene M. Burd, Esquire and Marks, LLC as Escrow Agent. The purpose of the Alexander Finance Escrow Account was to set aside funds for the Indemnification of its officers and directors as set forth at Article X of the Bylaws, as well as for pending arbitrations. Withdrawals from the Alexander Finance Escrow Account required the authorized signature of Sirotovsky and Uritsky and Charoff per the terms of the Unanimous Consent (even though Uritsky had no ownership interest or officer position in Alexander Finance at the time of the signing of the Unanimous Consent on August 11, 2001).

28. On November 10, 2001, Charoff attempted to murder Sirotovsky with a baseball bat in the storage facility of the Property... upon information and belief, Charoff, Uritsky and Burd have sought to tamper with an Alexander Finance employee witness who saw the brutal beating of Sirotovsky.

40. Sirotovsky brings this action to rectify and prevent the manifest injustice caused by Uritsky, Charoff and Burd's willful, continuous and malicious exclusion of Sirotovsky from the physical premises of the Property, from ownership interests and rights in Alexander Finance, Alexander Holding and Commerce Way, dissipation of assets of Alexander Finance, Alexander Holding and Commerce Way, and resulting economic damages.

41. About the time of the attempted murder of Mr. Sirotovsky on November 10, 2002, the Kogan Group revealed to Uritsky and Charoff and Burd it had opened accounts for Mrs. Sirotovsky, Andrianova, L. Fityak, M. Fityak and Gavrilov.

42. In June 2002, after being informed that the Kogan Group was colluding with Charoff, Uritsky and Burd against the Defendants and had moved into the Alexander Finance building, Defendants requested that the Kogan Group close their accounts and remit the proceeds. However, the Kogan Group in collusion with the other Counterclaim Defendants did not close the accounts and have refused to.

43. Instead, Plaintiff Alexander Finance filed the present Complaint in bad faith knowing the allegations not to be true and that Kogan's Affidavit had

significantly exaggerated the amounts deposited in Defendants' accounts. Further, at the instance of Charoff, Uritsky and Burd wrongfully froze the bank accounts which have been severely depleted since first requested and refused because of the decline in the stock market and the Kogan's Group inability to pay the guaranteed rate on the fixed money accounts and unexplained disappearance of same.

44. Additionally, the Counterclaim Defendants have filed false criminal complaints against the foreign Defendants Andrianova, L. Fityak, M. Fityak in the Ukraine and Gavrilov in Russia in an effort to intimidate them in this proceeding and to deprive them of their monies.

Counterclaimants then pled a RICO count.

46. Alexander Finance, Alexander Holding, Commerce Way, Kogan & Company and Penn Financial Group are enterprises within the meaning of 18 USC 1961(4) which are engaged in or the activities of which affect interstate or foreign commerce.

47. The fraud described above represented a scheme and artifice to defraud Defendants which was facilitated by use of the United States mails and wires, by an attempt to murder Arkady Sirotovsky on November 10, 2001; by financial institution fraud; by perjury, suborning of perjury and obstruction of justice; tampering with witness victims, retaliating against witness victims. Further, in order to execute the illegal scheme, various Defendants and their agents traveled in interstate and foreign commerce and engaged in money laundering and monetary transactions in property derived from specified unlawful activity under 18 USC 1957.

48. Such mail and wire fraud, act or threat of murder, financial institutional fraud, perjury and obstruction of justice; tampering and retaliating against witness victims, acts of interstate and foreign travel in aid of racketeering, money laundering and unlawful monetary transactions, constitute racketeering activity as that term is defined in 18 USC 1961(1)(B).

49. Counterclaim Defendants' multiple fraudulent activities as detailed above constitute a pattern of racketeering activity within the meaning of 18 USC 1961(5), going back to 1992 and 1993 in Russia.

50. Uritsky, Charoff, Burd and Kogan with their agents, associates, and representatives have conducted, and have conspired to conduct, infiltrate and corrupt the affairs of the Alexander Finance, Alexander Holdings, Commerce Way, Kogan and Company, and Penn Financial Group through a pattern of racketeering activity in violation of 18 USC 1962(c) and (d) which threat continues ongoing

into the future.

51.     Based upon the nature of the Illegal Scheme and counterclaim, Defendants having excluded Sirotovsky from the premises and books of Alexander Finance, Alexander Holding and Commerce Way as well as the Kogan Group's collusion with Charoff, Uritsky and Burd to effectively turn over Mrs. Sirotovsky's account and those of the four foreign defendants to them, some of the details of Counterclaim Defendants' wrongdoing are exclusively within the possession of Alexander Finance and the Counterclaim Defendants, preventing the original Defendants from pleading certain facts with greater particularity.

52.     However, it has been discovered that during 1996 and 1997 Uritsky and Charoff took money in the amount of $1.8 Million from Alexander Finance and diverted $3.6 million to Alexander Holding while at the same time refusing to pay for said service in Russia and coal from various mines purchased and sold by Alexander Finance.  They also refused to pay numerous other vendors thus causing vendors in Russia to stop doing business with Alexander Finance causing a loss of the coal business.

53.     Uritsky, Charoff, and Burd secreted Alexander Finance monies in Account 87046932, Credit Swiss Bank, in Zurich, Switzerland, an account controlled by Charoff, Uritsky and Burd.  During visits to Switzerland, Uritsky took the money and used it for personal expenses.

54.     In September 2001 money stolen from Alexander Finance in the amount of $200,000 was transferred by Uritsky and Charoff to Penn Financial Group accounts.  Further, they hired ghost employees; used Alexander Finance Credit Cards for personal expenses and paid personal legal bills to Gene Burd and other lawyers with Finance funds and in general diverted Alexander Finance funds to their own personal uses.

Clearly, under the liberal Burd standard, Counterclaimants successfully pled or said a Rico count to the extent possible since Mr. Sirotovsky was denied access to the premises and records that would give further particulars of the RICO points of contact.

**4.      Defends Have Stated a Cause of Action Against Gene Burd for Breach of Fiduciary Duty in Counts II and VII.**

Mr. Burd's Motion on the corporate counts is largely based on metaphysical subtleties and ignores the point of the counterclaim; namely, that Burd conspired with Charoff and Uritsky to

intentionally injure Mr. Sirotovksy and freeze him out of the corporation.  This action is not protected by the business judgment rule nor subsumed under sections 1712 and 1717 of the Business Corporation of the Business Corporation Law since it is essentially a rogue-like activity to cut off corporate democracy.   A formal demand, thought not necessary under these circumstances, was repeatedly made, contrary to Mr. Burd's Assertions.

It is axiomatic that majority shareholders have a duty not to use their power in such a way to exclude minority shareholders from their proper share of benefits accruing from the enterprise... when they do act in their own interest it must also be in the best interest of all shareholders and the corporation.  Pennsylvania law holds that an attempt by a group of shareholders to "freeze out" minority shareholders for the purpose of continuing the enterprise for the benefit of the majority shareholders constitutes a breach of the majority shareholders' fiduciary duty to the minority shareholders.  <u>Kessler v. Broder</u>, 2004 Pa. Super. 200, 851 A.2d 944, (2004); <u>Viener v. Jacobs</u>, 2003 Pa. Super. 324, 834 A.2d 546, 566 (2003)

A claim for breach of fiduciary duty sounds in equity.  A "freeze out" occurs in a closely held corporation when a minority shareholder, as here, is removed from office or his power or compensation is substantially diminished.  The "business judgment rule" does not apply to insulate the oppressing shareholders or directors "because the issue is the prevention of a shareholder- director's participation in the governance of a closely held corporation, as opposed to the power of the corporation to manage its property and conduct its business affairs.  As such, judicial determination of this issue requires an analysis of the equitable relationship between [the parties] and, therefore, does not implicate matters left to the business judgment of corporate officers or directors... judicial review of equitable corporate obligations does not impute the

business judgment rule". Viener, supra, 834 A.2d. at 556, 557

Nor does the "business judgment rule" validate corporate actions designed to undermine shareholder's voting rights, as in our case, where the directors seek to entrench themselves nor are they protected by Section 1712 (a) when corporate democracy is interfered with or there is self-dealing, as here. Warehime v. Warehime 2001 Pa. Super.141, 777 A.2d 469, 477, 480-483 (2001). Pennsylvania's Business Corporation Law does not afford existing management and directors carte blanche to perpetuate their control.

Both directors and majority shareholders owe the minority shareholders a duty of care, diligence, and good faith and therefore must act to protect the minority shareholders' interests. Seven Springs Farm, Inc. v. Croker 2000 Pa. Super, 72, 748 A.2d740,756 (2000):

> Where the issue is one of self dealing, and rogue-like behavior, as here,
> "The alleged wrongdoing does not involve breach of any duties or responsibilities that defendants owed the corporations as officers or directors Officers and directors are responsible only for the management of the business of the corporation... Consequently, the provisions of section 1712 and 1717 do not apply to this alleged wrongdoing... Consequently, a minority shareholder rather than the corporation is the proper party to bring a lawsuit based on the breach of these duties...
>
>> In Tyler v. O'Neill 994 F. Supp. 603, 609-610 (E.D. Pa. 1998), the court recognized that an individual stockholder who has pled an injury that he or she suffered has his or her own cause of action. The test is whether an individual shareholder has pled an injury separate and distinct from that suffered by the corporation. Petterich v. Styling Technology Co., 49 Pa. D & C 4th 54 (Allegheny, 2000)

Further, in the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action. Baron v. Pritzker 52 Pa. D & C. 4th 14, 16 (Phila. 2001).

**5.     Defends Have Stated a Cause of Action Against Gene Burd for the Remaining Counterclaims.**

12

As to Mr. Burd's other objections, Defendants successfully pled a Breach of Contract and Interference with Contractual Claims:

> 66. The terms of the Unanimous Consent required the presence of the authorized signatures of all of the following individuals: Arkady Sirotovsky, Andrew Charoff and Eugene Uritsky, to permit the release of any of the $100,000.00 placed in an escrow account with Gene Burd, Esquire and Marks, LLC acting as escrow agent.
>
> 67. Sirotovsky has never agreed to the release of any of the funds placed in escrow.
>
> 68. Charoff and Uritsky have nonetheless withdrawn funds from the Alexander Finance Escrow Account for purposes other than those for which the account was created, without the authorized permission and signature of Sirotovsky in direct breach of the Unanimous Consent date August 11, 2001.
>
> 74. Sirotovsky brings this action for breach of contract for failure to comply with all the material conditions of the Alexander Finance Amended and Restated Operating Agreement, Alexander Finance Bylaws and the Commerce Way Bylaws which are the governing documents of the respective entities.
>
> 75. Additionally, Defendants entered into an investment and brokerage contract with Michael Kogan, Kogan and Company, and Penn Financial Group to pay a guaranteed rate of return and of privacy to protect all accounts and return monies on request. However, the Kogan Group revealed these accounts to the other Counterclaim Defendants and colluded with them to deprive Mrs. Sirotovsky and the Foreign Defendants of their accounts and have not returned their investments.

Likewise, the Defendants successfully pled a count in Conversion.

> 83. Charoff, Uritsky, and Burd have willfully deprived Sirotovsky of monies and profits rightfully owing to him, of his right to the Property located at 2708 Commerce Way and the $100,000 Escrow Account and otherwise interfered with his use or possession thereof without his consent and without legal justification improperly by including (but not limited to) the following:
>
> 1) by physically excluding Plaintiff from the Property,
>
> 2) excluding Sirotovsky from his ownership interest in Alexander Holding including one-half interest in the profits and rents generated from the

>    Property,
>
> 3)   excluding Sirotovsky from his ownership interest in Alexander Finance and monies rightfully accruing to him, and
>
> 4)   by excluding Sirotovsky from his ownership interest in Commerce Way.
> 5)   by improperly charging his capital account for the waste of the counterclaim defendants.
>
> 85.   Additionally, Michael Kogan, Kogan and Company, and Penn Financial Group revealed to the other Counterclaim Defendants that Mrs. Sirotovsky and the four Foreign Defendants had accounts with the Kogan Group and subsequently all the Counterclaim Defendants colluded to deprive the account holders of the use of their funds.

The count for Constructive Trust successfully pleads:

> 89.   Pursuant to the aforementioned misappropriation of assets by Counterclaim Defendants, the latter have an equitable duty to reconvey them to the appropriate individuals and entities as the case may be.

Additionally, Count IX for Wrongful Use and Abuse of Process pleads:

> 131.   Additionally, In July 2002 and thereafter, counterclaimant defendants have brought criminal charges against original defendants Andrianova M. Fitiak and L. Fitiak in the Ukraine and Gavrilov in Russia falsely accusing them of stealing, diverting, or converting funds from Alexander Finance. Eugene Burd falsely represented to the Russian authorities that the U.S. Federal Government had brought criminal Rico charges against Mr. Sirotovsky. On August 1, 2002 Uritsky and Charoff called Gavrilov to intimidate him and sent representatives Vladimir Vladimorovich and Fedor Fedorovich to terrorize him. On August 5, 2002 returned and Fedor represented that he was from the KGB. Upon information and belief, Gavrilov's car was purposely rammed in September in connection with the above.

Furthermore, it was Mr. Burd who personally signed the present Complaint and based it on an affidavit he secured from the felon Kogan.

Defendants are happy to accommodate Mr. Burd with additional particulars. They are attaching certain documents that show his signature authority over Alexander Finance account

resolution and business account and the escrow account of $100,000; various "freeze out" documents; selected bank documents showing disbursements to Burd and his law firm; moneys paid to hire a criminal lawyer to defend against attempted murder of Sirotovsky; termination of Sirotovsky and his family's medical health insurance immediately after the attempted murder on November 10, 2001; payment to ghost employees Natalia Charoff, wife of A. Charoff, and Boris Vinogradov, Charoff's father-in-law, and Personal expenses of Charoff's relatives; Burd's signature powers over an account at Credit Suisse Bank, Zurich and right to manage finances of Alexander Finance C.D. Inc. and Uritsky's private company, Alexander Finance, Inc.; payments from Alexander Finance C.D. Inc. to Gene Burd, in three different names including as G. Burd, Gene Burd Esq., and Meridian USA (Gene Burd's private company) totaling $470,000; giving free space in the Commerce Way Building to Michael Kogan and Kogan & Company Penn Financial Group and other companies of counter-defendants, including Goldwin Austen, Inc., and Goldwin Austen Opportunity Fund. See attached Bill of Particulars with exhibits in support of Defendants' Response to Mr. Burd's Motion to Dismiss.

**C.    CONCLUSION**

In light of the liberal standard of pleading previously proposed by Burd and accepted by the Court in sustaining Burd's Complaint, logically the Motion to Dismiss the Counterclaim

should be denied.  Mr. Burd's Motion unwittingly betrays that he is on sufficient notice of what is claimed.

                                                            \_\_DM 1117_____
DANTE MATTIONI, ESQUIRE
PAUL A. KETTUNEN, ESQUIRE
399 Market Street, Second Floor
Philadelphia, PA 19106
(215)629-1600